# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 1999 Session

## SHELBY JEAN CHOATE LASSITER v. CHARLES DAVID LASSITER

**Appeal from the Chancery Court for Robertson County**
**No. 13701   Carol Catalano, Judge**

---

**No. M1999-00374-COA-R3-CV - Filed September 28, 2000**

---

This case involves a divorce ending a seven-year marriage. The divorce was awarded to the wife on grounds of the husband's inappropriate marital conduct. The trial court divided the property and debts according to the parties' stipulations. The court then awarded the wife alimony *in futuro* and ordered the husband to pay $750 of the wife's attorney fees. The husband appeals the awards of alimony and attorney fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

COTTRELL, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., and CAIN, J., joined.

John B. Holt, Springfield, Tennessee for the appellant, Charles David Lassiter.

Charlotte U. Fleming, Springfield, Tennessee, for the appellee, Shelby Jean Choate Lassiter.

### MEMORANDUM OPINION[1]

Shelby Jean Choate Lassiter ("Wife") and Charles David Lassiter ("Husband") married in 1991. The marriage was Husband's second and Wife's third. Husband had one minor child, for whom Wife provided care for two years. The parties adopted Wife's grandchild, who reached the age of majority shortly after the trial.

---

[1]Rule 10 of the Rules of the Court of Appeals reads as follows:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied upon in any unrelated case.

Wife had been diagnosed with post-polio syndrome in 1985, and was "getting around well" but exhibiting some symptoms of the condition when the parties married. Husband was aware of her condition. Wife's health deteriorated throughout the marriage. By the time of the trial, Wife "had to rest for hours in order to do normal household chores." She testified that she had continued to prepare meals, pay bills, and run the household. Wife had received Social Security disability payments for some time. She cared for Husband's daughter, and at least once used her Social Security payments to pay Husband's child support arrearage when his business was slow.

When the parties married, Husband had a roofing business and he worked in sheet metal. He owed $5,000 on the house and $13,000 in back taxes. Apparently Husband also had "liens on his property" in addition to the other debts, but the amounts owed, and the reasons for the liens are not part of the record. Wife arranged for a $70,000 consolidation loan secured by the house. Husband admitted that Wife "straightened out his finances." The parties thought they could handle the payments on the new loan. Husband began to experience physical problems, however, which prevented his work as a roofer or a sheet metal worker, and the parties lost their home through foreclosure. They lived with Wife's parents for about two years.

The parties began experiencing marital difficulties. One day, Husband went to work and simply did not return; he moved in with his parents. Sometime after the separation, Wife moved from her parents' home into her own apartment. Wife filed a complaint for divorce, alleging inappropriate marital conduct and abandonment. The trial court, after hearing the evidence, awarded Wife a divorce on grounds of Husband's inappropriate marital conduct because Husband had "not returned home nor made any arrangement for them to resume their relationship as husband and wife." Husband does not appeal the grant of the divorce to Wife.

The court divided the property and the debts according to the parties' stipulations, and noted that each party had debts for deficiency judgments, which the court described as "debts for which [they] have nothing to show." The court noted that those debts were the kind which "one would typically expect to see discharged in bankruptcy." The court ordered Husband to pay $400 per month as alimony *in futuro*, and $750 of Wife's attorney fees. Husband appeals the awards of alimony and attorney fees.

Ordinarily, our review would be *de novo* upon the record with a presumption of correctness for the findings of fact by the trial court unless the preponderance of the evidence was otherwise. *See* Tenn. R. App. P. 13(d). Husband did not submit a transcript of the proceedings, nor did he submit a statement of the evidence pursuant to Tenn. R. App. P. 24(c). "In the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorably to the appellee." *King v. King*, 986 S.W.2d 216, 220 (Tenn. Ct. App. 1998) (quoting *Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1994)). This court must presume the trial court's findings of fact are correct. *See id.* Husband argues that, in the case before us, a transcript or a statement of the evidence was not necessary. He claims the findings of fact made by the trial court in its final decree were never

contested. He does not now dispute the factual findings of the court, but maintains that, under the facts presented, the trial court erred in its awards of alimony and attorney fees.

Alimony *in futuro* is a continuing, but modifiable, support obligation to an economically disadvantaged spouse. *See* Tenn. Code Ann. § 36-5-101(d) (Supp. 1999). Alimony *in solido* is an unmodifiable lump sum award. *See id.* In the context of a divorce proceeding, attorney fee awards are considered as alimony *in solido*. *See Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996).

In making an alimony award, a court must consider a number of factors, including the relative earning capacity, obligations, needs and financial resources of the parties. *See* Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (Supp. 1999) (listing the factors a court must consider). "The need of the spouse receiving the support is the single most important factor." *Watters v. Watters*, 22 S.W.2d 817, 821 (Tenn. Ct. App. 1999). The obligor spouse's ability to pay is also an important consideration. *See Hazard v. Hazard*, 833 S.W.2d 911, 917 (Tenn. Ct. App. 1991). Because support decisions are factually driven and involve considering and balancing numerous factors, appellate courts give wide latitude to the trial court's discretion. *See Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989).

Husband appeals the awards of attorney fees and alimony *in futuro*, claiming that, considering the short duration of the marriage and his own inability to pay, the award is excessive. He claims that his own obligations, and his lack of any savings for retirement, make him unable to pay the amounts ordered. He contends that, if he filed bankruptcy, as he asserts the trial court suggested, he would never be able to establish financial independence or establish credit for himself. He further claims that Wife's standard of living has improved since the separation, in that she moved from her parents' home into her own apartment.

The trial court found that Wife needed alimony "for mere survival until her death." Based upon the record before us, Wife is clearly an economically disadvantaged spouse. Her Social Security disability payment of $594 per month was her only income. The trial court found that Wife was "physically and totally disabled from working . . . absolutely unemployable . . . physically and psychologically altered as a human being due to her post-polio syndrome condition." In comparison, Husband earned $1,400 to $1,600 per month. The court found that Husband was "healthy and the facts show that he [had] survived his illnesses, [was] regularly and gainfully employed and could potentially be employed to a greater degree."

The trial court's findings that Wife is economically disadvantaged and is not capable of rehabilitation establish the prerequisites for an award of alimony, including alimony *in futuro*. *See* Tenn. Code Ann. § 36-5-101(d)(1). Her limited income and her modest expenses established her need for spousal support. Having found that Wife was in need of alimony, the trial court considered "the only remaining question . . . whether he can pay somehow for her maintenance until . . . the day of her demise or remarriage."

The trial court conscientiously and painstakingly evaluated the parties' relative situations in determining Husband's ability to pay, Wife's need, and the amount of support to be awarded. For example, the trial court reduced Wife's claimed expenses by $200 per month, lowered Husband's child support payments by almost $150 per month in recognition of the payments their child received due to Wife's disability, and recognized that the child support obligation would cease altogether in December of 1998. The court approved the distribution of debts and of marital property according to the parties' stipulations.

The court sympathized with Husband's financial situation, stating that "all he thought he was acquiring in his lifetime through his business is gone," and that he would have to drive a bus until Social Security provided him with money to live. However, the court noted that Husband had in the past driven for other bus lines in addition to his primary employer, but was not doing so at the time. This opportunity provided Husband with the ability to work full time even when his employer did not have sufficient trips for him.

We cannot say that the trial court failed to consider all factors relevant to the determination to award spousal support. To the contrary, the court thoroughly considered and weighed the necessary factors. Further, there is nothing in the record before us to indicate that the trial court's award of alimony *in futuro* was contrary to the weight of the evidence.

As noted above, an award of attorney fees in the context of a divorce proceeding is considered alimony *in solido*. *See Herrera*, 944 S.W.2d at 390. The factors to be considered in making an award of alimony *in solido* are the same as those considered in making an award of alimony *in futuro*, with the exception of the possibility of rehabilitation. *See* Tenn. Code Ann. § 36-6-101(d)(1)(A)-(L). For the reasons we discussed above in affirming the award of alimony *in futuro*, we also affirm the award of attorney fees.

Accordingly, we affirm the order of the trial court awarding attorney fees and alimony *in futuro* to Wife and remand for such further proceedings as may be necessary. Costs are taxed to the appellant, Charles David Lassiter, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-4-